# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3532
_____

United States of America

*Plaintiff - Appellee*

v.

Andre Bell-Washington

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 23, 2024
Filed: January 13, 2025
[Published]
_____

Before COLLOTON, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

Andre Bell-Washington pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Presentence Investigative Report (PSR) calculated an advisory guidelines sentencing range of 21 to 27 months imprisonment, based on a total offense level of 12 and criminal history category IV.

The statutory-maximum sentence is 15 years. At sentencing, the district court[1] adopted the PSR advisory range without objection. Both parties recommended a 27-month sentence. Varying upward, the district court sentenced Bell-Washington to 60 months imprisonment. He appeals, arguing the sentence is substantively unreasonable. As in United States v. Hubbs, we conclude the district court did not abuse its "substantial sentencing discretion" and therefore affirm. 18 F.4th 570, 572 (8th Cir. 2021). "The district court considered [Bell-Washington's] mitigating factors, weighed them against his extensive criminal history and propensity for violence, and concluded that an upward variance was warranted." Id. at 573.

In July 2022, members of a Kansas City FBI violent crimes task force stopped a car traveling with an expired temporary tag for a traffic violation and for a "high-risk vehicle check" because the vehicle's passenger, Bell-Washington, matched the description of a possibly armed fugitive. Officers ordered the driver and passenger to exit the vehicle. The driver complied. Bell-Washington remained in the front passenger seat, repeatedly looked over his shoulder at the officers, ignored their commands, and kept his right hand obstructed from their view. When the officers deployed two noise flash diversionary devices near the vehicle, Bell-Washington exited and was detained.

Bell-Washington was not the suspected fugitive, but an on-scene records check revealed he was a convicted felon. The driver, Bell-Washington's mother, informed the officers in an on-scene interview that he had been "acting weird" for a few days and was holding a firearm when the vehicle was pulled over, refusing her pleas to put the weapon down. She believed he intended to shoot at the officers and consented to a vehicle search. The officers discovered a loaded handgun on the floorboard of the front passenger seat where Bell-Washington was seated, with one live round in

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

the chamber. A computer check showed a prior Missouri felony conviction for Involuntary Manslaughter 1st Degree and Armed Criminal Action.

The PSR detailed Bell-Washington's extensive criminal history, which included the first degree involuntary manslaughter and armed criminal action conviction in 2016, when Bell-Washington was 23 years old, in which he shot the victim multiple times in the head after agreeing to buy marijuana. The PSR detailed numerous other convictions beginning when Bell-Washington was 17 that included fleeing from police, resisting arrest multiple times, threatening officers, stealing, domestic violence, and possession of drug paraphernalia. In addition, Bell-Washington received fifteen institutional conduct violations while serving the involuntary manslaughter sentence and committed this firearm offense while on parole for the manslaughter offense.

After hearing argument and a statement from Bell-Washington, the district court explained why it was varying upward from the advisory guidelines range. The court began by stating it was required to consider the 18 U.S.C. § 3553(a) sentencing factors, "and I've considered all those factors." The court then focused on relevant mitigating factors -- the support of family members who wrote and attended the sentencing hearing and the fact that Bell-Washington "did take responsibility in a timely way." However, the court continued:

> Then we look at the other side of this. There's a factor called respect for the law. And the fact that law enforcement couldn't get you out of that car and they had to use these devices, explosive devices, to get you out of the car while you're on parole for involuntary manslaughter, where someone was shot multiple times in the head, that's not helping you, right?
>
> . . . So respect for the law is a big one here. And that's also illustrated in [PSR] paragraph 31, where you fled from police, resisted

arrest, threatened police afterwards. . . . You were stealing in a general merchandise store of some sort.

Then in paragraph 32 is another case of obstructing or resisting arrest.

And then we have domestic assault in paragraph 34.

And then, of course, involuntary manslaughter first degree and armed criminal action, for which you had just got out of prison . . . not very much ahead of when you came in contact with law enforcement.

\* \* \* \* \*

. . . [W]e also look at how you're going to do on supervised release when you get out. And you had 15 institutional conduct violations while you were incarcerated. And that goes to respect for the law . . . .

. . . [T]he max is 15 years on this case. You're not going to get 15 years today, but you're not going to get 27 months. It just doesn't fit. Based on this conduct, based on someone who's already died on the streets of Kansas City and you get caught with a gun right after -- pretty close to after you get out of prison, this is just a recipe for disaster.

\* \* \* \* \*

So it is the judgment and sentence of this Court . . . that Mr. Andre Bell-Washington is hereby committed to the custody of the Bureau of Prisons for 60 months on this one-count indictment. This is above the guidelines. This is a variance above the guidelines. And it's really kind of tempered with the fact that you did admit this, you did take responsibility; otherwise, I think it could have been much higher, Mr. Bell-Washington.

-4-

On appeal, Bell-Washington argues the district court abused its discretion by imposing an excessive sentence significantly above the advisory guidelines range. "We review a defendant's challenge to substantive reasonableness under a highly deferential abuse-of-discretion standard." United States v. Jones, 71 F.4th 1083, 1086 (8th Cir. 2023). A district court abuses its sentencing discretion when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotation omitted). It is "the unusual case when we reverse a district court sentence -- whether within, above, or below the applicable Guidelines range -- as substantively unreasonable." Id. at 464. "When the district court imposes a sentence outside the Guidelines range, [this court] may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." United States v. Luscombe, 950 F.3d 1021, 1031-32 (8th Cir. 2020) (quotation omitted).

After careful review, we conclude the district court did not abuse its substantial discretion in varying significantly above the guidelines range. The court properly considered Bell-Washington's offense conduct, his criminal history, and relevant mitigating factors, applying the § 3553(a) sentencing factors. Bell-Washington's "disagreement with how the district court weighed the [§ 3553(a)] factors does not demonstrate abuse of discretion." United States v. McSmith, 968 F.3d 731, 737 (8th Cir. 2020). "[A] district court has wide latitude to assign weight to sentencing factors, and the district court may give some factors less weight than a defendant prefers or more weight to the other factors, but that alone does not justify reversal." United States v. Isler, 983 F.3d 335, 344 (8th Cir. 2020) (quotations omitted).

Bell-Washington contends that the Guidelines already consider and account for the criminal history factors that the district court reviewed when varying upward.

Although prior convictions are incorporated in the guidelines range, we have repeatedly stated that "a sentencing court may vary upward based on criminal history already accounted for by the Guidelines." United States v. Manuel, 73 F.4th 989, 993 (8th Cir. 2023); see United States v. Obi, 25 F.4th 574, 581-82 (8th Cir. 2022). Even when the government has recommended a guidelines range sentence, rather than a variance, "it is the district court judge, not the Government, that is responsible for determining the appropriate sentence for a criminal defendant after considering the factors of section 3553(a)." Hubbs, 18 F.4th at 573 (quotation omitted).

Bell-Washington argues there was "nothing egregious" about his possession of a firearm found on the vehicle's floorboard -- he did not point, shoot, threaten anyone, or commit another felony offense while having the weapon. But Bell-Washington's mother told the officers that he was holding the firearm and was prepared to use it against the police when the vehicle was stopped, consistent with his prior history of violent offenses against police officers and others. Bell-Washington labels his firearm possession a "mine run" offense. But his criminal history is not that of a "mine run" felon-in-possession offender. "We may consider the extent of any deviation from the guideline range, but Gall [v. United States, 552 U.S. 38 (2007)] forbids requiring proportional justifications for variances from the range, and even extraordinary variances do not require extraordinary circumstances." United States v. Owens, 966 F.3d 700, 710 (8th Cir. 2020) (quotation and citation omitted), cert. denied, 141 S. Ct. 2812 (2021).

These well-established precedents confirm that the district court did not abuse its discretion in imposing a sentence that included an upward variance. Accordingly, the judgment of the district court is affirmed.

_____