# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2395
_____

United States of America

*Plaintiff - Appellee*

v.

Julian Bear Runner

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: February 13, 2025
Filed: April 24, 2025

_____

Before COLLOTON, Chief Judge, BENTON and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

Julian R. Bear Runner was convicted of wire fraud, larceny, and embezzlement and theft from an Indian Tribal Organization in violation of 18 U.S.C. §§ 1343, 661, 1153, 1163. The district court[1] sentenced him to 22 months in prison

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

and ordered $82,484 in restitution.  Bear Runner appeals.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

The Oglala Sioux Tribe ("OST") is a federally recognized Indian Tribal Organization headquartered in Pine Ridge, South Dakota.  Bear Runner, an enrolled member of OST, served as President from December 2018 through December 2020.

Before taking office, Bear Runner learned about the Tribe's travel policies during orientation.  Travelers were required to complete a travel authorization form specifying the dates, destination, and purpose of their trip.  Once the details were verified, a travel specialist advanced the full amount of the estimated expenses to the traveler.  If a traveler did not make the trip, they were responsible to return the unused funds to the Tribe.  Those who travelled were required to submit a travel report upon their return.

While President, Bear Runner pressured travel specialists to approve forms, submitted fraudulent travel requests, and ultimately embezzled travel funds.  With advance payments of over $80,000, he traveled to and gambled at the Prairie Wind Casino in Pine Ridge, South Dakota.

The jury found Bear Runner guilty on all counts.  He argues that the government failed to prove the requisite criminal intents for his offenses, and that the district court committed procedural and substantive errors in sentencing.

## II.

This court reviews a challenge to the sufficiency of the evidence de novo and will affirm the jury's verdict "if, taking all facts in the light most favorable to the verdict, a reasonable juror could have found the defendant guilty of the charged conduct beyond a reasonable doubt." *United States v. Clark*, 668 F.3d 568, 572 (8th

Cir. 2012). This court's task is not to weigh the evidence or assess witness credibility because the jury has "the sole responsibility to resolve conflicts or contradictions in testimony." *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010).

The wire fraud, larceny, and embezzlement charges required the government to prove intent. *See* **18 USC §§ 1343, 661, 1153, 1163.** "Fraudulent intent need not be proved directly and can be inferred from the facts and circumstances surrounding a defendant's actions." *United States v. Flynn*, 196 F.3d 927, 929 (8th Cir. 1999).

Bear Runner argues that his intent to defraud the Tribe is negated because "per [tribal] policy," he "would have expected any overpayments to be withheld from his pay." He expected that his failure to file travel reports would result in a payroll deduction, the argument goes, disproving any intent to defraud, steal, or embezzle funds.

But according to the travel specialist, it was Bear Runner—not the Tribe—who was responsible for ensuring funds *not* used for official travel were returned to the Tribe. Bear Runner never repaid any of the advance payments. The jury also received sufficient evidence to reasonably infer his intent to defraud. Bear Runner often submitted requests for travel to two different destinations at the same time, receiving funds for both. Despite requesting and receiving funds to travel to Nebraska, New Mexico, Montana, Ohio, South Carolina, Arizona, New York, and California, he exclusively visited the Prairie Wind Casino in South Dakota. Twice, he presented at tribal meetings on the reservation when he was claimed to be traveling. "When the 'necessary result' of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself." *United States v. Brown*, 627 F.3d 1068, 1073 (8th Cir. 2010).

Bear Runner's treatment of the travel specialist and his administrative assistant further defeats his argument. Evidence suggested he used his position as Tribe president to manipulate the approval process in his favor—pressuring staff to fast-track approvals and to ignore red flags. He visited the travel office after hours,

and "hover[ed] over" specialists, rushing them to approve his requests. The Tribe's accounts-payable supervisor, for example, testified that Bear Runner arrived after hours "wanting to push [travel authorizations] through" in a way that made her feel "not too well." Multiple employees testified they felt pressured to sign his forms, or risk losing their jobs. Bear Runner's administrative assistant further testified that she was asked to close out travel reports without the required receipts and that Bear Runner directed her to draft memos justifying his travel. "A scheme to defraud is generally one which is reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Behr*, 33 F.3d 1033, 1035 (8th Cir. 1994).

Sufficient evidence supported the jury's verdict that Bear Runner intended to defraud, steal, and embezzle.

## III.

Bear Runner argues that the district court committed procedural and substantive error in sentencing. Because he failed to object at the time of sentencing, review is for plain error. *United States v. Lovelace*, 565 F.3d 1080, 1087 (8th Cir. 2009). Bear Runner must show "there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Delgrosso*, 852 F.3d 821, 828 (8th Cir. 2017); **Fed. R. Crim. P. 52**.

Bear Runner argues that the district court erred by "misconstru[ing] his statement to the court as indicative of a lack of acceptance of responsibility." But his own brief acknowledges a "refusal to accept responsibility" for "political reasons . . . ." Bear Runner pled not guilty, explicitly told the court he did not accept responsibility, and shifted blame to employees in the accounting department for his actions. At no point did he accept responsibility for embezzling over $80,000 from the Tribe. *See United States v. McQuay*, 7 F.3d 800, 802–03 (8th Cir. 1991)

(acceptance of responsibility requires defendants to express genuine remorse and accept responsibility for their wrongs). The district court committed no procedural error.

Bear Runner also argues that the district court committed substantive error in failing to consider a relevant factor in sentencing. *See* **18 U.S.C. § 3553(a)(6)** (a sentencing court "shall consider" sentencing disparities among similarly situated defendants). "A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal." *United States v. St. Claire*, 831 F.3d 1039, 1043 (8th Cir. 2016).

This argument fails. The district court acted within its discretion in considering similarly situated defendants and determining that Bear Runner's individual circumstances warranted a different outcome. The court considered Bear Runner's extensive criminal history, the impact of his crimes, his failure to accept responsibility, and the need to protect the public from future crimes. A sentencing court has "wide latitude to weigh the 3553(a) factors in each case and assign some factors greater weight than others." *See United States v. Hubbs*, 18 F.4th 570, 572 (8th Cir. 2021).

\* \* \* \* \* \* \*

The judgment is affirmed.

_____